**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

|  | x |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| BLUESUMMIT MEDICAL GROUP LLC,[1] | : | Case No. 24-61191-RBC |
|  | : | (Procedural Consolidation Requested) |
| Debtors in Possession. | : |  |
|  | x |  |

**MOTION OF THE DEBTORS FOR ENTRY OF AN INTERIM ORDER (I)
AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING
ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING**

BlueSummit Medical Group LLC ("**BlueSummit**") and certain of its affiliates (collectively, the "**Debtors**") in the above-captioned Chapter 11 bankruptcy cases (the "**Chapter 11 Cases**"), by and through their proposed counsel, hereby move (the "**Motion**") the Court for entry of an interim order, in the form attached hereto as **Exhibit A** (the "**Interim Order**"), pursuant to sections 361 and 363 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer identification number are as follows: BlueSummit Medical Group LLC (9384), Oasis HH Operations LLC (5349), Shenandoah Valley Home Health Inc. (4608), Seven Hills Hospice, LLC (8231), Seven Hills Home Health, Inc. (0554), Ashland Development Company, Inc. (6734), ProCare TN Operations LLC (2100), Reliable Home Health Care LLC (0294). The location of Debtor BlueSummit Medical Group LLC's principal place of business is: 14805 Forest Road, Suite 205, Forest, Virginia 24551.

Brittany B. Falabella (VSB No. 80131)
Kollin G. Bender (VSB No. 98912)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:    804.771.9500
Facsimile:    804.644.0957
E-mail:       bfalabella@hirschlerlaw.com
              kbender@hirschlerlaw.com

*Proposed Counsel for the Debtors*

Debtors to use cash collateral and grant adequate protection. In support of the Motion, the Debtors submit as follows:

**CONCISE STATEMENT OF THE RELIEF REQUESTED**

Pursuant to Bankruptcy Rule 4001(b)(1)(B), the Debtors submit the following:

(i) <u>Name of the entities with an interest in the cash collateral</u>: Byline, Oak Ridge, CT, McKesson, and the MCA Creditors (Kalamata, MNY, and Dynasty), as defined in paragraphs 12 through 15 below.

(ii) <u>Purposes for the use of cash collateral</u>: to operate the businesses, pay employees and other expenses, consistent with the budget attached as Exhibit 1 to the proposed Interim Order.

(iii) <u>Duration of the use of cash collateral</u>: the Debtors seek an Interim Order for the use of cash collateral to avoid immediate and irreparable harm to the estate, and for the Court to schedule a final hearing to approve the use of cash collateral for the duration of the case.

(iv) <u>Liens and cash payments provided to each entity with an interest in the cash collateral</u>: (a) monthly adequate protection payments to Byline and Oakridge, in the amounts of $8,500 and $6,500 respectively; and (b) post-petition replacement liens to the Secured Creditors, to the same extent, validity, and in the same order of priority that such liens existed prior to the bankruptcy filing. The Debtors reserve the right to challenge the liens and claims of the Secured Creditors, and specifically the MCA Creditors, and nothing herein should be construed as an admission by the Debtors. See paragraphs 16-17, and 22 below; and paragraphs 4-6 of the proposed Interim Order.

**JURISDICTION**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The predicates for the relief requested herein are sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001.

**BACKGROUND**

3. On October 25, 2024 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code initiating the Chapter 11 Cases. The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed.

5. Contemporaneously herewith, the Debtors have filed a motion requesting the joint administration/procedural consolidation of the Chapter 11 Cases pursuant to Rule 1015(b) of the Bankruptcy Rules and Local Rule 1015-1 of the Local Rules for the Western District of Virginia Bankruptcy Court (the "**Local Rules**").

6. BlueSummit is the parent entity that operates and manages the affiliate Debtor entities. With the exception of ProCare TN Operations, LLC, the remaining Debtor entities all provide or provided home health, home care, and hospice care as described in more detail below to patients in Virginia, Tennessee, and Ohio.

7. Through their home health divisions, certain of the Debtors provide skilled in-home nursing services, including, but not limited to, speech, occupational, and physical therapies, and

3

nursing services to medically compromised individuals typically consisting of children and the elderly (the "**Home Health Services**").

8. Through their home care divisions, certain of the Debtors provide private duty care to patients in need of regular assistance with day-to-day tasks and functions, which often involve medically compromised or fragile individuals (the "**Home Care Services**").

9. Through their hospice care, certain of the Debtors provide medical assistance to terminal patients at the end of their lives (the "**Hospice Services**" and together with the Home Health Services and the Home Care Services, the "**Services**").

10. BlueSummit first began offering the Services in 2022 through its acquisition of what are now the Debtor entities (a) Oasis HH Operations, LLC d/b/a BlueSummit NOVA, a Virginia Limited Liability Company ("**Oasis**") and (b) Reliable Home Health Care LLC, an Ohio Limited Liability Company ("**Reliable**"). In 2023, it expanded significantly acquiring what are now the Debtor entities (c) Ashland Development Company, Inc. a Tennessee corporation doing business as ProCare Home Health & Private Duty Services ("**ProCare**"), which it acquired through its newly-formed ProCare TN Operations, LLC, a Virgnia Limited Liability Company ("**ProCare Ops**"), (d) Shenandoah Valley Home Health, Inc., a Virginia corporation ("**SVHH**"), (e) Seven Hills Home Health, Inc., a Virginia corporation ("**Seven Hills Home**"); and (f) Seven Hills Hospice, LLC, a Virginia limited liability company ("**Seven Hills Hospice**").

11. Additional information about the Debtors' businesses, structure, affairs, and circumstances leading to the commencement of the Chapter 11 Cases can be found in the *Declaration of Timothy Bradbury in Support of the Debtors' Chapter 11 Petitions and Related Requests for Relief* (the "**Bradbury Declaration**") filed contemporaneously herewith and incorporated herein.

4

**CREDITORS WHICH MAY ASSERT AN INTEREST IN CASH COLLATERAL**

12. On or about February 8, 2022, BlueSummit and Reliable entered into an SBA-guaranteed loan and security agreement with Byline Bank ("**Byline**") in the amount of $1,141,500 (the "**Byline Loan**"). The current balance due under the Byline Loan is approximately $900,000 and the monthly payments are approximately $16,500, of which amount, approximately $8,500 is interest. The Byline Loan is secured by BlueSummit's and Reliable's accounts receivable and other property, and Byline perfected its security interest against BlueSummit by filing UCC-1 financing statement with the Virginia State Corporation Commission on January 12, 2022. Byline also filed a UCC-1 financing statement with the Ohio Secretary of State on January 12, 2022 against Reliable Home Healthcare LLC.[2]

13. On or about May 24, 2022, BlueSummit and Oasis entered into an SBA guaranteed loan and security agreement with the Bank of Oak Ridge ("**Oak Ridge**") in the amount of $843,000 (the "**Oak Ridge Loan**"). The current balance due under the Oak Ridge Loan is approximately $700,000 and the monthly payments are approximately $11,500, of which amount, approximately $6,500 is interest. The Oak Ridge Loan is secured by the accounts receivable and other property of BlueSummit and Oasis, and Oak Ridge perfected its security interest against BlueSummit and Oasis by filing a UCC-1 financing statement with the Virginia State Corporation Commission on May 26, 2022.

---

[2] On May 13, 2022, FFE Services LLC, as representative for Fundation Group, LLC ("**Fundation**") filed a UCC-1 financing statement with the Ohio Secretary of State against Reliable asserting an interest in Reliable's accounts and other assets to secure a line of credit extended to Reliable in the maximum amount of $100,000. The line of credit has been fully paid off and is locked, but the lien has not yet been released or terminated. Fundation will receive notice of these Motions, but it is not a creditor.

5

14. On February 2, 2023, CT Corporation System, as representative for a presently unknown party ("**CT**") filed a UCC-1 financing statement with the Tennessee Secretary of State against ProCare. The CT filing predates BlueSummit's acquisition of ProCare on or about August 9, 2023. Upon information and belief, the Debtors assert that this filing should have been terminated upon their acquisition of the ProCare entity. The Debtors are continuing to investigate and will work to determine the true filer and its secured or unsecured status prior to final hearing.

15. On November 8, 2023, McKesson Corporation for itself and as collateral agent for each of its affiliates ("**McKesson**") filed a UCC-1 financing statement with the Virginia State Corporation Commission against BlueSummit, and described its collateral as being "all assets of the Debtor, wherever located and whether now or hereafter existing and whether now owned or hereafter acquired, of every kind and description, tangible or intangible, including without limitation all accessions thereto and all products and proceeds thereof." According to the Debtors' books and records, BlueSummit owes McKesson a total of $23,390.96, but the Debtors were not aware that BlueSummit had granted McKesson a security interest. The Debtors will investigate this further, and work with McKesson to determine its secured or unsecured interest prior to a final hearing.

16. Prior to the Petition Date, the Debtors also obtained funds pursuant to so-called "Merchant Cash Advances" ("**MCAs**") from the following:

    a. Upon information and belief,[3] Kalamata Capital Group LLC/Black Olive Capital LLC ("**Kalamata**"),[4] which filed a UCC-1 financing statement with the Virginia State

---

[3] Each of the MCAs have used a third-party agent to file the UCC-1 financing statements and thus, certainty in identification is not possible based on the records. The Debtors have identified the UCC-1 financing statements belonging to each MCA to the best of their ability based on the dates and terms of the underlying agreements.

[4] Kalamata Capital Group LLC and Black Olive Capital LLC are separate legal entities. Black Olive Capital LLC was the counterparty to the MCA Agreement with BlueSummit. BlueSummit thereafter received demand for payment on the MCA Agreement from Kalamata Capital Group LLC. The Debtors list both entities as it is unclear whether

6

Corporation Commission on August 9, 2024 against BlueSummit, Reliable, Seven Hills Home, Mr. Bradbury, and several other unrelated non-debtor entities. Kalamata described its collateral as follows: "All Accounts of Debtor, whether now owned or hereafter acquired, and any and all proceeds thereof."

    b.  MNY Capital LLC ("**MNY**"), upon information and belief, filed a UCC-1 financing statement with the Virginia State Corporation Commission on September 27, 2024 against BlueSummit, Seven Hills Home, and several other unrelated non-debtor entities. MNY described its collateral as follows: "Receivables- All Assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts: Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Proceeds and Products of the foregoing [sic]." MNY amended the UCC-1 on October 10, 2024 to add Reliable as a debtor; on October 11, 2024 to add Oasis Home Health Care, Inc. (Not the Debtor Oasis) as a debtor; and again on October 11, 2024 to again add Reliable Home Healthcare, Inc. (not the Debtor Reliable) as a debtor.

    c.  Dynasty Capital 26 LLC d/b/a Dynasty Capital ("**Dynasty**"), upon information and belief, filed a UCC-1 financing statement with the Virginia State Corporation Commission on October 8, 2024 against BlueSummit. Dynasty described its collateral as follows: "All Accounts, now owned or hereafter acquired and wherever located, including but not limited

---

the MCA Agreement with Black Olive Capital LLC was sold to or otherwise transferred to Kalamata Capital Group LLC or which is the proper entity.

7

to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; i. Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and l. Proceeds and Products of the foregoing." On or about October 9, 2024, just one day after filing the UCC-1, Dynasty attached BlueSummit's primary bank account at PNC Bank, pursuant to an *ex parte*, pre-judgment Writ, Summons, and Direction for Attachment, without notice or due process and in violation of the United States Constitution. *See Fuentes v. Shevin,* 407 U.S. 67 (1972).

17. Kalamata, MNY, and Dynasty are referred to herein as the "**MCA Creditors**", and the MCA Creditors along with Byline, Oak Ridge, CT, and McKesson are referred to as the "**Secured Creditors**." Notwithstanding the terminology herein, the Debtors reserve all rights to continue to investigate and, if appropriate challenge said liens or agreements.

18. In addition, as explained in the Debtors' *Motion for Interim and Final Orders Confirming and Enforcing Automatic Stay as to the Debtors' Accounts Receivable and Granting Related Relief* filed contemporaneously herewith, the MCA Agreements are loans, and not sales of accounts receivable. Moreover, for purposes of this Motion, the Debtors do not concede the validity of the liens of the MCA Creditors, and reserve all rights with respect to (a) investigating the MCA Creditors pre-Petition Date conduct, (b) pursuing avoidance action claims, and (c) challenging their claims and liens, if appropriate.

19. During the term of the Interim Order, the Debtors seek to maintain the status quo by offering replacement liens to each of the Secured Creditors, to the same extent, validity, and in the same order of priority that any such liens existed prior to the Petition Date. Prior to a final hearing on this Motion, the Debtors will evaluate all of their secured debt obligations, work with

8

the Secured Creditors in an effort to develop any further reasonable and appropriate adequate protection terms, and will attempt to present an agreed order for the use of cash collateral on a final basis.

## RELIEF REQUESTED

20. The Debtors require the use of their cash, bank accounts, and accounts receivable ("**Cash Collateral**") in order to operate their businesses, pay their employees, and effectively reorganize. Moreover, the Debtors require the use of their Cash Collateral on an emergency basis to avoid immediate and irreparable harm to the bankruptcy estates pending a final hearing. A projected four week cash-flow budget is attached to the proposed Interim Order as **Exhibit 1**.

21. By this Motion, the Debtors seek entry of the Interim Order (i) authorizing the use of the Debtors' Cash Collateral; (ii) granting adequate protection to the Secured Creditors in connection with the Debtors' use; (iii) waiving any stay; and (iv) scheduling a final hearing.

## BASIS FOR RELIEF REQUESTED

22. Section 363(c) of the Bankruptcy Code prohibits the use of cash collateral unless the party with an interest in the cash collateral consents or the Court authorizes such use. 11 U.S.C. § 363(c). Section 363(e) of the Bankruptcy Code provides that upon request of an entity that has an interest in property to be used by a debtor, the court shall prohibit or condition such use as is necessary to provide "adequate protection" of such interest. 11 U.S.C. § 363(e).

23. The Bankruptcy Code does not explicitly define "adequate protection," but does provide a non-exclusive list of the means by which a debtor may provide adequate protection. *See* 11 U.S.C. § 361(c). Section 361 provides that, "When adequate protection is required under section 362, 363, or 364 of this title of the interest of an entity in property, such adequate protection may be provided by – (1) requiring the trustee to make a cash payment or periodic cash payments

9

to such entity [or] . . . (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease or grant results in a decrease in the value of such entity's interest in such property . . . ." 11 U.S.C. § 361.

24. The Debtors propose to provide post-Petition Date liens to the Secured Creditors upon assets of the Debtors, to the same extent, validity, and in the same order of priority, that such liens existed prior to the Petition Date. The Debtors further propose that the replacement liens be deemed effective without the necessity of the Secured Creditors taking any other action, including the filing of any additional security documents with respect thereto. Finally, the Debtors propose to make ongoing monthly payments to Byline and Oak Ridge, in the amounts of $8,500 and $6,500 respectively, which are approximately the monthly interest payments for each obligation.

25. Pursuant to Bankruptcy Rule 4001(b)(2), a minimum of 14 days' notice is required before a final hearing on the Motion may take place. The same rule, however, also provides that the Court "may conduct a preliminary hearing before such 14-day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2).

26. In addition, Bankruptcy Rule 6003(b) provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition," grant relief upon "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate." Fed. R. Bankr. P. 6003(b).

27. As set forth above, the Debtors have an immediate and urgent need for the use of the Cash Collateral. If the Debtors are unable to utilize the Cash Collateral, the Debtors would be forced to shut down all of their business operations. The Debtors believe their value as a going concern is significantly greater than the liquidation value of their assets. Thus, the Debtors request

that the Court approve the protection proposed herein as adequately protecting the Secured Creditors' interests and authorize the Debtors to provide those protections. Additionally, the Debtors submit that the requirements of Bankruptcy Rules 4001(b)(2) and 6003(b) have been satisfied.

28. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court schedule a final hearing on the Motion. The Debtors further request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first class mail upon the Notice Parties listed below. The Debtors also request that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001(c)(2).

29. Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Bankruptcy Rule of the Court that might otherwise delay the effectiveness of any Order, and for the reasons explained herein, the Debtors respectfully request that the terms and conditions of the Interim Order be immediately effective and enforceable upon entry.

## NOTICE

30. Notice of this Motion has been provided by electronic or overnight mail to: (i) the Office of the United States Trustee for the Western District of Virginia; (ii) each of the Secured Creditors, (iii) counsel to the Secured Creditors, if known; (iv) the top 20 unsecured creditors for each Debtor; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, under the circumstances, no other or further notice of the Motion is required.

11

## NO PRIOR REQUEST

31. No prior request for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: October 28, 2024
                     */s/ Brittany B. Falabella*
                     Brittany B. Falabella (VSB No. 80131)
                     Kollin G. Bender (VSB No. 98912)
                     HIRSCHLER FLEISCHER, P.C.
                     The Edgeworth Building
                     2100 East Cary Street
                     Post Office Box 500
                     Richmond, Virginia 23218-0500
                     Telephone: (804) 771-9500
                     Facsimile: (804) 644-0957
                     E-mail: bfalabella@hirschlerlaw.com
                                   kbender@hirschlerlaw.com

                     *Proposed Counsel for the Debtors*

# **EXHIBIT A**

**(Proposed Interim Order)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

|  |  |  |
|---|---|---|
| In re: | x : | Chapter 11 |
|  | : |  |
| BLUESUMMIT MEDICAL GROUP LLC,[1] | : | Case No. 24-61191-RBC |
|  | : | (Procedural Consolidation Requested) |
| Debtors in Possession. | : |  |
|  | x |  |

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer identification number are as follows: BlueSummit Medical Group LLC (9384), Oasis HH Operations LLC (5349), Shenandoah Valley Home Health Inc. (4608), Seven Hills Hospice, LLC (8231), Seven Hills Home Health, Inc. (0554), Ashland Development Company, Inc. (6734), ProCare TN Operations LLC (2100), Reliable Home Health Care LLC (0294). The location of Debtor BlueSummit Medical Group LLC's principal place of business is: 14805 Forest Road, Suite 205, Forest, Virginia 24551.

---

Brittany B. Falabella (VSB No. 80131)
Kollin G. Bender (VSB No. 98912)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:     804.771.9500
Facsimile:       804.644.0957
E-mail:           bfalabella@hirschlerlaw.com
                      kbender@hirschlerlaw.com

*Proposed Counsel for the Debtors*

**INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL;
AND (II) GRANTING ADEQUATE PROTECTION**

Upon the motion (the "**Motion**")[2] of BlueSummit Medical Group LLC ("**BlueSummit**") and its affiliates (collectively, the "**Debtors**") in the above-captioned Chapter 11 bankruptcy case, by and through their proposed counsel, for entry of a interim order, pursuant to sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001, authorizing use of cash collateral and granting adequate protection to the Secured Parties; the Court finds that: (a) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M); (c) the relief requested in the Motion is in the best interest of the Debtors, their estate and creditors, and is necessary to prevent immediate and irreparable harm; (d) proper and adequate notice of the Motion and the hearing thereon has been given and no other or further notice is necessary; (e) the Secured Parties are adequately protected by virtue of the monthly payments and replacement liens as proposed in the Motion; and (f) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein. Therefore,

**IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Motion is hereby **GRANTED** on an interim basis.

2.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order.

3.      Subject to the terms and conditions of this Interim Order, the Debtors are authorized to use the Cash Collateral as set forth in **Exhibit 1** (the "**Budget**").

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

4. As adequate protection under section 361 of the Bankruptcy Code for the use of the Cash Collateral, the Secured Creditors shall have a replacement lien on all post-Petition Date cash collateral of the Debtors to the same extent, validity, and in the same order of priority as their liens existed prior to the Petition Date. The replacement liens shall be deemed effective without the necessity of the Secured Creditors taking any other action, including the filing of any additional security documents with respect thereto.

5. As further adequate protection to the SBA lenders, and as set forth in the Budget, the Debtors shall pay Byline Bank $8,500, and the Bank of Oak Ridge $6,500, which amounts will cover the monthly interest on such loans.

6. The Debtors reserve all rights to continue to investigate and challenge the liens of all Secured Creditors and in particular, the Debtors do not acknowledge the validity of the MCA Creditor liens, nor release potential claims against the MCA Creditors for their pre-Petition Date conduct. All rights of the Debtors (and a committee of unsecured creditors, if one is appointed) to challenge all liens and claims are preserved.

7. The final hearing on the Motion is scheduled for_____ __, 2024 at __:__ _.m. (prevailing Eastern Time) in the United States Bankruptcy Court for the Western District of Virginia, at _____ (the "**Final Hearing**").

8. Within three business days of the entry of this Interim Order, the Debtors shall serve a copy of this Interim Order, thereby providing notice of the Final Hearing, on (a) the U.S. Trustee; (b) each of the Secured Creditors, and their counsel if known; and (c) those creditors holding the twenty (20) largest unsecured claims against the Debtors' estates. Any objection to the relief requested in the Motion on a permanent basis must, by 4:00 p.m. (prevailing Eastern Time) on _____ __, 2024 (the "**Objection Deadline**"), be: (a) filed with the Court; and (b) actually

received by: (i) the Office of the U.S. Trustee, First Campbell Square Building, 210 First Street, SW, Suite 505, Roanoke, VA 24011; (ii) proposed counsel to the Debtors, Hirschler Fleischer, P.C., P.O. Box 500, Richmond, Virginia 23218-0500, Attn: Brittany B. Falabella, Esq. and Kollin G. Bender, Esq., email: bfalabella@hirschlerlaw.com and kbender@hirschlerlaw.com; (iii) counsel for any official committee of unsecured creditors (if appointed); (iv) all other secured parties identified herein; and (v) the list of the top 20 unsecured creditors for each Debtor on or before the Objection Deadline.

9.  The contents of the Motion and the notice procedures set forth herein are good and sufficient notice and satisfy Bankruptcy Rules 4001 and 9014 by providing parties with notice and an opportunity to object and be heard at a hearing.

10. Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Bankruptcy Rule that might otherwise delay the effectiveness of this Interim Order, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

11. This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Interim Order.

*\*\*End of Order\*\**

4

We ask for this:

 /s/Brittany B. Falabella
Brittany B. Falabella (VSB No. 80131)
Kollin G. Bender (VSB No. 98912)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:  (804) 771-9500
Facsimile:   (804) 644-0957
E-mail: bfalabella@hirschlerlaw.com
           kbender@hirschlerlaw.com

*Proposed Counsel for the Debtors*


SEEN AND NO OBJECTION:

_____
Office of the United States Trustee
First Campbell Square Building
210 First Street, SW
Suite 505
Roanoke, VA 24011
Email:  Webb.King@usdoj.gov

*Office of the United States Trustee*

5

**Exhibit 1**

**(Budget)**

## BlueSummit Medical Group
Interim Cash Collateral Budget
Period October 28 - November 24

| Period | Period W/E 11/01/24 | Period W/E 11/08/24 | Period W/E 11/15/24 | Period W/E 11/22/24 | Period P/E 11/22/24 |
|---|---:|---:|---:|---:|---:|
| **Collection From Receipts** | **145,100.00** | **211,575.00** | **129,075.00** | **106,000.00** | **591,750.00** |
| **Payments to COGS** | | | | | - |
| Direct Labor Cost | 55,000.00 | 63,500.00 | 55,000.00 | 63,500.00 | 237,000.00 |
| **Total Cost of Sales** | | | | | - |
| **Net Cash after Payments** | 90,100.00 | 148,075.00 | 74,075.00 | 42,500.00 | 354,750.00 |
| | | | | | - |
| Indirect Labor Cost | | 38,005.00 | | 38,005.00 | 76,010.00 |
| Payroll Taxes catchup | | | | | - |
| Rent Expense | 18,649.00 | | | | 18,649.00 |
| Utilities | 579.00 | | | | 579.00 |
| Debtors' Prof./Committee Prof./Court fees | | 25,000.00 | 25,000.00 | 20,000.00 | 70,000.00 |
| Debt Service - Byline Bank | 8,500.00 | | | | 8,500.00 |
| Debt Service - Oak Ridge Bank | 6,500.00 | | | | 6,500.00 |
| Accounting fees | 1,750.00 | | 1,750.00 | | 3,500.00 |
| Recruiting | | 2,500.00 | | 2,500.00 | 5,000.00 |
| Waste Disposal | | | 90.00 | | 90.00 |
| Payroll Service Fee | 1,500.00 | 500.00 | 1,500.00 | 500.00 | 4,000.00 |
| Medical Billing Prof. Fees | | 5,000.00 | | | 5,000.00 |
| Medical Directors Fee | | 6,500.00 | | | 6,500.00 |
| Billing Software | 12,500.00 | | 12,500.00 | | 25,000.00 |
| Coding Fees | | 6,000.00 | | | 6,000.00 |
| Medical Supplies | 2,500.00 | | 2,500.00 | | 5,000.00 |
| Lab Fees | | 1,500.00 | | | 1,500.00 |
| Advertising & Promotion | | 150.00 | | 150.00 | 300.00 |
| Marketing | | | | | - |
| Equipment Rental | 2,500.00 | | 2,500.00 | | 5,000.00 |
| Travel | 150.00 | 150.00 | 150.00 | 150.00 | 600.00 |
| Meals | | | | | - |
| Mileage Reimbursement | 625.00 | 625.00 | 625.00 | 625.00 | 2,500.00 |
| Auto Expenses | | | | | - |
| Auto Lease | | | | | - |
| Fuel - Vehicle | | | | | - |
| Internet and Phone | 2,250.00 | | 2,250.00 | | 4,500.00 |
| Software & Subscriptions | 9,000.00 | | | | 9,000.00 |
| Insurance | | | 6,450.00 | | 6,450.00 |
| Health Insurance | 3,000.00 | | | | 3,000.00 |
| Worker's Comp Insurance | 5,000.00 | | | | 5,000.00 |
| Office Supplies | 250.00 | | 250.00 | | 500.00 |
| Postage and Shipping | 25.00 | 25.00 | 25.00 | 25.00 | 100.00 |
| Printing | 50.00 | 50.00 | 50.00 | 50.00 | 200.00 |
| Shredding Service | 125.00 | 125.00 | 125.00 | 125.00 | 500.00 |
| Bank Charges | 500.00 | 500.00 | 500.00 | 500.00 | 2,000.00 |
| Pharmacy | 2,400.00 | | 2,400.00 | | 4,800.00 |
| **General and Administrative Expenses** | 78,353.00 | 48,625.00 | 58,665.00 | 24,625.00 | 210,268.00 |
| | | | | | |
| **Total Payments to OPEX** | **78,353.00** | **86,630.00** | **58,665.00** | **62,630.00** | **286,278.00** |
| | | | | | |
| **Sub Total cashflow from Operations** | 11,747.00 | 61,445.00 | 15,410.00 | (20,130.00) | 68,472.00 |